Amy M. Wilkins (SBN 022762)
THE WILKINS LAW FIRM, PLLC
3300 N. Central Ave., Ste. 2600
Phoenix, AZ  85012
Tel:  602-795-0789
awilkins@wilkinslaw.net

John V. Golaszewski (admitted pro hac vice)
THE CASAS LAW FIRM, PC
1740 Broadway, 15th fl.
New York, NY 10019
Tel: 855-220-9626
john@talentrights.com
joseph@talentrights.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Devin Justine Takeguma, et al.<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Freedom of Expression, LLC,<br><br>　　　　　Defendant. | Case No.18-cv-2552-PHX-MTL<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE MARTIN BUNCHER**<br><br>**Oral Argument Requested** |

Plaintiffs submit this memorandum of law in opposition to Defendant's motion to exclude the report and testimony of Plaintiffs' expert, Martin Buncher. (Dkt. 46; "Mov. Br.").

## ARGUMENT

**I.    DEFENDANTS' MOTION IS UNTIMELY AND SHOULD BE STRICKEN.**

As set forth in the Court's October 9, 2018 scheduling order (entered by then presiding judge Hon. Diane J. Humetewa) dispositive motions were originally to be filed in this case on March 20, 2020. (Dkt. 15, ¶ 7). Pursuant to a stipulated motion, on November 12, 2019, this Court (Hon. Michael T. Liburdi), extended, *inter alia*, the dispositive motion deadline to May 19, 2020. (Dkt. 33). Cognizant of this deadline,

Plaintiffs and Defendant filed their summary judgment motions on May 19, 2020 (Dkt. 39 and 40), and on that same day Plaintiffs filed their *Daubert* motion to exclude Defendant's expert. (Dkt. 37). Defendant filed no *Daubert* motion on that date. Nearly a month later, and in an obvious attempt to muddy the record in the hope of saving its own expert from exclusion, Defendant, without leave of Court, filed its motion exclude Buncher. The implication of this filing -- *i.e.*, that Defendant is free, at any time, to file a *Daubert* motion -- is deeply flawed and supported by no authority because no authority exists in this district or circuit which would allow litigants to file dispositive motions whenever they feel like it. Indeed, in both the original October 2018 scheduling order and the Court's November 2019 order amending that scheduling order, the final deadline was the dispositive motion deadline. That is, nothing is to occur after that deadline.[1] Dispelling any conceivable doubt about the operative deadlines, the model scheduling order of Hon. Michael T. Liburdi – to whom this case was reassigned nearly ten months ago -- specifically contemplates that "[d]ispositive motions and motions challenging expert opinion testimony shall be filed" concurrently.[2] Thus, since Defendant was not free to file its dispositive *Daubert* motion at any time, since it is bound by the deadlines set by this Court, and since the model order of Judge Liburdi specifically mandates that the dispositive and *Daubert* motions must be filed concurrently, Defendant's motion to exclude Buncher's report and testimony should be stricken.

---

[1] Indeed, the only post-dispositive motion deadline contemplated in the Court's original scheduling order was the deadline for Plaintiffs to inform the Court that they are ready for a final pretrial conference, which was to occur (where, as here, dispositive motions have been filed) "within **ten days** after the resolution of dispositive motions." (Dkt. 15, ¶ 11) (emphasis in original order). Even if Judge Humetewa was still presiding over this case, clearly such provision is irrelevant to Defendant's ability to file a *Daubert* motion nearly a month after dispositive motions are due.

[2] *See* Ex. A, model scheduling order of Hon. Michael T. Liburdi, ¶ 7, found at https://www.azd.uscourts.gov/sites/default/files/judge-orders/MTL%20Scheduling%20Order.pdf.

## II.    RULE 702 AND THE *DAUBERT* STANDARD.

Federal Rule of Evidence 702 allows for expert testimony by "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education…" (Fed. R. Evid. 702), and the Supreme Court's holding in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* entrusts the district court with a gatekeeping role to determine admissibility of expert testimony by "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). Such role "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 536 U.S. 137, 141 (1999).  The Ninth Circuit has long held that survey evidence should be admitted "as long as [it is] conducted according to accepted principles and [is] relevant," *Wendt v. Host Int'l*, 125 F.3d 806, 814 (9th Cir. 1997), and has further asserted that any perceived "technical inadequacies" in a survey, "including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (citations omitted). *See also, Wendt*, 125 F.3d at 814 ("Challenges to survey methodology go to the weight given the survey, not its admissibility.") the report and survey of Plaintiff's consumer marketing expert Martin Buncher ("Buncher") tests issues relevant to Plaintiffs' Lanham Act claims and has been conducted according to accepted principles of consumer marketing, Defendant's motion to exclude his testimony should be denied.

3

### III.    BUNCHER'S SURVEY AND REPORT.[3]

Buncher's Survey and Report sought to gauge consumer beliefs concerning what was communicated by Plaintiffs' images in Defendant's advertisements for its strip club, Bones Cabaret ("Bones" or the "Club").[4] Mirroring, in part, the language of 15 U.S.C. § 1125(a), survey respondents were shown the subject advertisements and asked, *inter alia*, whether they believed the women in the advertisements participated in activities at Bones, agreed to promote Bones, or approved the use of their image in Bone's advertisements.[5] Buncher also asked each survey respondent whether they recognized each Plaintiff. (*Id.*).

Since each Plaintiff will testify at trial -- as each has testified in her summary judgment declaration (Pls. MSJ, Exs. C-H) -- she had no affiliation with Bones or consented to its use of her image(s) (and Defendants will present no evidence to the contrary), Buncher's survey results showing, *inter alia*, 69% of survey respondents believed Plaintiffs had some affiliation, connection, or association with Bones; 83% of survey respondents believed Plaintiffs had agreed to sponsor, endorse or promote Bones; 87% of respondents believed Plaintiffs approved the use of their images to promote Bones; 77% of respondents believed that Plaintiffs enjoyed a lifestyle like that reflected in the advertisements; and 68% of respondents believed that Plaintiffs would be participating in events at Bones (Buncher Report, Section 5), constitutes evidence Defendant's advertisements communicated certain things to consumers that were

---

[3] A true and correct copy of Buncher's Report, without its voluminous exhibits, is annexed as Exhibit M to Plaintiffs' motion for summary judgment. (Dkt. 39; "Pls. MSJ"). Plaintiffs respectfully incorporate by reference all arguments, terms and definitions set forth therein.

[4] Buncher Report, Section 1, Summary of Assignment and Opinions ("IMI was asked to conduct marketing research to explore possible confusion among consumers exposed to [Defendants'] advertising in terms of what they understood about the women's appearances in the Internet advertising material.")

[5] *Id.*, Section 4. *See also,* 15 U.S.C. § 1125(a)(1)(A), quoted *infra*, Section IV.A.

factually inaccurate, false and misleading, and actually confused consumers.  At trial, this evidence will be helpful to a jury in assessing whether Defendant's advertisements were likely to cause consumer confusion for purposes of false association under the Lanham Act.[6] As set forth in his report, through his survey Buncher also learned that an average of an average of 16% of respondents recognized Plaintiffs, with recognition levels ranging between Plaintiffs from 14% to 19%. (Buncher Report, Section 5).

Not only did Defendant not conduct its own survey concerning consumer confusion, it declined to even attempt to rebut Buncher's survey with a rebuttal report or rebuttal expert, and thus the record is devoid of a single critique of Buncher or an iota of evidence to dispute Buncher. Moreover, in its untimely motion to strike, Defendant nowhere challenges (and thus concedes) Buncher is an expert in consumer marketing and surveys and that his survey was conducted according to accepted consumer marketing principles. Because the test for admissibility under *Wendt* is thus roundly met, Defendant's challenge to Buncher's admissibility is reduced to trivial critiques -- none supported by empirical evidence, a rebuttal witness, or any other authority -- concerning a purported lack of a control group and how he worded certain questions, foundationless critiques which at most go only to the weight of Buncher's testimony, not its underlying admissibility under *Wendt* and its Ninth Circuit progeny, and which have already been specifically considered and rejected by judges sitting in the District of Arizona.

## IV.    BUNCHER'S SURVEY, REPORT AND TESTIMONY ARE ADMISSIBLE.

### A. Defendant Misunderstands Buncher's Inquiry and Lanham Act Authority.

In a glaring misstatement of Buncher's findings and Lanham Act jurisprudence generally, Defendant first tells this Court that Plaintiffs have offered no evidence of

---

[6] *See AECOM Energy and Construction, Inc. v. Morrison Knudsen Corp.*, 748 Fed.Appx. 115, 118 (9th Cir. 2018) ("To succeed on [a] false association claim under 15 U.S.C. § 1125(a)(1)(A), [a plaintiff] must prove that [d]efendants: '(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of [its] goods or services.'" (Citations omitted.))

"actual confusion" and Plaintiffs are thus "left with only one other option: to establish likelihood of confusion" through expert testimony and surveys." (Def. Mov. Br. at 2). Defendant itself is confused. As the Court is no doubt aware, the Lanham Act, 15 U.S.C. § 1125(a), prohibits, *inter alia*, the use of "any word, term, name, symbol, or device, or any combination thereof … which is likely _to cause confusion, or to cause mistake, or to deceive_ as to the _affiliation, connection, or association_ of such person with another person, or as to the _origin, sponsorship, or approval_ of his or her goods, services, or commercial activities by another person…." (emphasis added). As briefed by Plaintiffs in their summary judgment motion, district courts sitting in the Ninth Circuit apply the *Sleekcraft* factors to gauge "likelihood of confusion" and one of those *Sleekcraft* factors is evidence of "actual confusion." (Pls. MSJ at 11-14 (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.3d 341 (9th Cir. 1979)). Thus, in order to gauge actual confusion, Plaintiffs hired Buncher to conduct a survey in order to understand what Defendant's advertisements communicated to consumers; what Buncher learned is that Defendant's advertisements led the vast majority of survey respondents to believe certain facts -- *e.g.,* that Plaintiffs were strippers at Bones; that they sponsored Bones; that they agreed to be in Bones' advertisements; that they were associated or affiliated Bones -- that all parties agree are not true. *Ergo*, actual confusion is established, and under the *Sleekcraft* balancing test, this factor will thus strongly favor Plaintiffs. Defendant does not get to change the Lanham Act inquiry to compensate for its glaring failure to conduct its own survey or hire a rebuttal expert, and its misstatement of basic Lanham Act authority does nothing to detract from Buncher's overwhelming survey results.

### B. A "Control Group" Is Not Required.

Defendant's primary argument for Buncher's exclusion -- that he should have employed a control group (Mov. Br. at 8-11) -- is not only offered with no support but has been specifically rejected by this Court. As succinctly explained by this Court, Hon.

James A. Teilborg, two weeks ago in a basically identical attempt by a strip club to exclude Buncher's robust survey evidence of confusion:

> Defendant first claims that Buncher's expert testimony must be precluded because he did not use a control group. **Defendant cites no law for the proposition that a survey must be precluded as unreliable where there is no control group.** This issue is one for the factfinder, not for the Court on a *Daubert* motion, as it is an asserted technical inadequacy that goes to weight, not admissibility. *See Taylor v. Trapeze Mgmt., LLC*, No. 0:17-CV-62262-KMM, 2019 WL 1977514, at *3 (S.D.Fla. Feb. 28, 2019); *Mattel, Inc. v. MCA Records, Inc.*, 28 F.Supp.2d 1120, 1135 (C.D.Cal. 1998).[7]

Judge Teilborg's position that no control group is required has not only been endorsed by other Ninth Circuit courts,[8] but also by the many other district courts which, like Judge Teilborg, have rejected similarly flawed attempts to exclude Buncher. *See, e.g., Edmondson, et al. v. Velvet Lifestyles, LLC, et al.*, 15-cv-24442 (S.D. Fla.) (denying *Daubert* motion to exclude Buncher and granting summary judgment in Plaintiffs' favor on Lanham Act claims based on Buncher's survey and report); *Edmondson, et al. v. Caliente Resorts, LLC, et al.,* 15-cv-2672 (SDM)(TBM) (M.D. Fla.) (denying *Daubert* motion to exclude Buncher); *Canas, et al. v. Flashdancers, Inc., et al.,* 16-cv-393 (TJC)(JRK) (M.D. Fla.) (denying *Daubert* motion to exclude Buncher).[9] That Defendant cannot find a single piece of Ninth Circuit authority to support its contention that Buncher was obligated to use a control group in his survey should clue this Court into the validity

---

[7] Ex. B, June 17, 2020 Order of Hon. James A. Teilborg in *Geiger v. Creative Impact, Inc.*, 18-cv-1443-PHX-JAT ("*Geiger* Order") at 4 (emphasis added).

[8] *See, e.g., TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 828 (9th Cir. 2011) (affirming district court's decision to not exclude a consumer survey that did not contain a control group.)

[9] *See* Exhibits C-E hereto. In July 2019 the *Canas* matter went to trial and Buncher presented his survey evidence to a jury, and the jury ultimately found that the strip club defendants in that case violated both the false advertising and false association provisions of 15 U.S.C. 1125(a)(1) based in part on Buncher's testimony.

and strength of this desperate argument, already rejected out-of-hand by the District of Arizona.

As Buncher explained in his report, control groups are not required, appropriate or feasible in a communications study of the type he designed in this case:

> It is particularly important to recognize that this research was designed as a **communications study**, intended to document only what the advertising alone conveyed…. It should be noted that this was not a "casual study," a scientific term describing other types of research with different objectives. Thus, it was **not appropriate nor was it possible** to use a control group in this type of study, i.e., a matched sample of respondents showing the same ads without the female images, because the research was designed to measure what the women shown in the advertisements … communicated and how their roles were perceived. It would not have been possible as one could not make such measurements if the women were not part of the stimuli, i.e., were not part of the ad. By the same token, using other women would still mean we could not be measuring the correct female images we needed to study.[10]

Put another way, the use of a control group would make no sense in Buncher's communications survey because it would have necessarily consisted of advertisements containing images of different women. As such, the survey evidence gathered would be immaterial to the underlying questions of what effect Plaintiffs had on consumer beliefs, which is what Buncher was trying to gauge. Clearly this was appreciated by Judge Teilborg in the *Geiger* matter, and Plaintiffs respectfully submit that this Court should also reject Defendant's flawed and unsupported control group argument here.

**C. Alleged Issues with Buncher's Wording Goes to Weight, Not Admissibility.**

Defendant next takes issue with the wording of a few of Buncher's questions (Mov. Br. at 11-14), the type of critique that even if valid (and it is not) is irrelevant on the issue of admissibility.[11]

---

[10] Buncher Report at Section 3 (bold in original, underline added).

[11] *See Fortune Dynamic*, 618 F.3d at 1036 ("technical inadequacies" in a survey, "including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility."

8

*First*, while Defendant concedes, as it must, that Buncher tested each Plaintiff's recognition level, and that such questions returned average recognition levels of 16% with recognition levels ranging between Plaintiffs from 14% to 19%, its strains to argue that Buncher's recognition questions did not "verify whether respondents truly recognized" Plaintiffs. (Mov. Br. at 11).  It goes without saying that this bewildering argument and purported new standard -- "***true*** recognition" as opposed to "recognition" -- finds support <u>nowhere</u> in Lanham Act jurisprudence, is offered with no authority, and thus falls flat.

*Second*, and regarding Buncher's questions concerning whether each Plaintiff "enjoy[s] a lifestyle" or "participates in events" referred to in the Bones advertisements, Defendant complains the question are ambiguous because "lifestyle" and "events" are not defined terms. (Mov. Br. at 12). As made clear by Buncher's Report however, all respondents had attended strip clubs in the past two years, and such sample was sought out, *inter alia*, so respondents would have a definite frame of reference as to what the terms "lifestyle" and "events" meant in the context of these questions.  Defendant either did not grasp this, or is being intentionally obtuse, but in all events such terms are in no way ambiguous, and even if they were, such ambiguity would once again go to the weight the survey is given, not its underlying admissibility. *See Geiger* Order at 5 (rejecting this identical argument because "[o]nce again, this challenge is centered on the formatting and wording of the survey's questions, which is related to survey methodology; thus, it goes to weight, not admissibility." (citing cases)).

*Third*, Defendant's argument that Buncher's reference to Defendant's advertisements as "advertisements" as opposed to "social media posts" or "pictures" (Mov. Br. at 12) is offered without support or authority and is deeply flawed. The word "pictures" is inherently ambiguous -- does it refer to just the picture of the Plaintiff, or the picture of the entire advertisement? -- and "social media posts" are posts any person can put on their own personal Facebook or Instagram page and which are not soliciting readers to patronize a business. Defendant's many advertisements, on the other hand,

were published for the purpose of attracting attention to Bones for Defendant's commercial benefit; *ergo*, they are, by definition, <u>advertisements</u>, and Buncher's use of the word is factually accurate and appropriate.

### D. A Communications Study is More Reliable When "Don't Know" or "No Opinion" Responses are Not Included.

Defendant's baseless and unsupported argument that Buncher should have included a "don't know" option in his questionnaire (Mov. Br. at 14) ignores -- and seeks to fundamentally alter -- the survey Buncher has designed.  As set forth in his Report, by <u>not</u> offering "don't know/no opinion" alternatives, Buncher employed a technique confirmed by researchers that guessing and error factors are <u>reduced</u> with this approach, because "don't know/no opinion" are improper responses in a communications study. As Buncher writes in his report:

> Any possible response bias was eliminated from the research execution by adding the phrase "if any" to appropriate questions, and by not inviting guessing by allowing "no response" or "don't know" options to the questions. This latter practice may be surprising to less sophisticated researchers. However, <u>research studies now commonly accepted show that questions which exclude the "don't know" option produce a greater volume of accurate data… and show the earlier standard of using "don't know/no answer" as actually *increasing error variance* in the data.</u>

(Buncher Report, Section 3(d)) (citing various consumer marketing authority) (emphasis added). If Defendants had an answer for this explanation they would have included in their moving brief, their failure to do so is dispositive on this argument, and this argument (like all its other arguments) has already been rejected by Judge Teilborg. *See Geiger* Order at 4 (dismissing defendant's criticism of Buncher (based exclusively on their rebuttal expert's report) for not including don't know/no opinion because "this qualm has to do with an asserted technical inadequacy," (citing cases), and noting that "Buncher indicated that he conducted the survey in accordance with principle in the field and that the survey was designed to ensure 'survey trustworthiness.'")

### E.  Prior Exposure to Bones is Irrelevant.

Without authority or extrapolation, Defendant next argues that Buncher "failed to account for prior exposure to Defendant's club in the ads." (Mov. Br. at 15). While it is not entirely clear what Defendant is trying to argue, to the extent Defendant is seeking to criticize Buncher for the fact that some survey respondents acknowledged having attended Bones, such criticism has once again already been addressed, and rejected by Judge Teilborg, who specifically held that "[t]he fact that the survey did not control for prior exposure to the flyers is related to survey methodology, and it therefore goes to weight, not admissibility." *Geiger* Order at 6 (citing cases)).

As set forth in his report, Buncher specifically sought out Phoenix-area strip club patrons for his survey and thus the fact that some respondents had been to Bones is both unsurprising and irrelevant, as it has no bearing on whether the respondent believed, *inter alia*, a Plaintiff agreed to promote Bones, was a stripper at Bones, or participated in activities at Bones. Defendant offers no argument or authority that repeat exposure to an advertisement alters a respondent's understanding of that advertisement, or that a survey respondent would be less truthful in relaying their impressions of an advertisement if that had seen it previously. Like the rest of their attacks on Buncher, these undeveloped critiques fall flat.

### F.  Bucher's Survey Tested the Relevant Issues Under 15 U.S.C. § 1125(a).

Defendant's final argument, that Buncher's survey and report did not gauge the relevant issue in this case (Mov. Br. at 15), is similarly misguided and ignores the many cases in which Buncher's opinion has been accepted, including by this Court. Among the questions a jury in this case will evaluate is whether Defendant's advertisements were likely to cause consumer confusion. *See AECOM Energy*, 748 Fed.Appx. at 118. Since all Plaintiffs will testify at trial that they had no affiliation with Bones and never worked there or promoted the Club, questions which seek to learn whether the advertisements communicated to respondents each Plaintiff's affiliation, promotion, or employment at

Bones go directly to the operative issue of whether the advertisements were likely to cause confusion. Thus, the argument that Buncher did not test the relevant issue is utterly without basis and like the rest of Defendant's undeveloped critiques, should also be rejected by the Court. As stated by Judge Teilborg when this identical critique was levied:

> None of the asserted flaws Defendant points to indicate that the survey is not relevant. In sum, the Court finds that Plaintiffs have shown that Buncher's testimony is relevant to the issues in this case. Expert testimony is relevant if it is "sufficiently tied to the facts of the case" such "that it will aid the jury in resolving a factual dispute." *See Daubert*, 509 U.S. at 591 (citation omitted).  As noted above, Plaintiffs assert a false light claim, appropriation claim, and Lanham Act claim for both false association and false advertising.  Buncher's survey evidence will at least be relevant as to whether the flyers imply that each of the Plaintiffs promoted or were associated with Defendant's strip club in some way, which is relevant to Plaintiffs' claims. Therefore the survey evidence will help the jury decide relevant issues, and thus the survey evidence is relevant.

*Geiger* Order at 9.  Moreover, Defendant's reliance on the exclusion of Buncher in *Toth v. 59 Murray Enterprises, Inc.*, 15-cv-8028, 2019 WL 95564 (S.D.N.Y. Jan. 2, 2019) backfires on it because Buncher's exclusion there was because he did not test each Plaintiff's recognition, a point paradoxically emphasized by Defendant in its moving brief. *See* Mov. Br. at 16) (quoting *Toth*, 2019 WL 96664, at *9, for the proposition that "the issue is whether respondents recognized plaintiffs or understood their appearances to be endorsements of the Clubs' goods and services."). But as Defendant acknowledges, Buncher did test recognition in this case, and came back with significant recognition levels for each Plaintiff. Thus, even if the operative inquiry on a claim brought under section 1125(a)(1)(A) is Plaintiff's "level of recognition" -- and it decidedly is not; rather, it is likelihood of confusion -- *Toth* is nevertheless irrelevant here because, unlike the survey in *Toth*, Buncher tested recognition levels for each Plaintiff.

## CONCLUSION

Plaintiffs respectfully request that the Court strike Defendant's motion to exclude the report, survey and testimony of Martin Buncher because the motion is untimely and thus in violation of the dates set forth in scheduling order, as amended.

In the alternative, Plaintiffs respectfully request that the Court deny Defendant's motion to exclude Buncher, and grant Plaintiffs such further relief as this Court deems just and proper.

Dated: New York, New York
       July 2, 2020

                              **THE CASAS LAW FIRM, P.C.**

                              By: /s/ John V. Golaszewski
                                  John V. Golaszewski, Esq.
                                  1740 Broadway, 15th Floor
                                  New York, New York 10019
                                  Tel: (646) 872-3178
                                  john@casaslawfirm.com

                                  *Attorneys for Plaintiffs*

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July, 2020, the foregoing was electronically filed with the U.S. District Court Clerk, District of Arizona, by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ John V. Golaszewski

John V. Golaszewski, Esq.
The Casas Law Firm, P.C.
1740 Broadway, 15th Floor
New York, New York 10019
Tel: (646) 872-3178
john@casaslawfirm.com

*Attorneys for Plaintiffs*

14